IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

ROBERT LOBEL

Plaintiff,                                                          CIVIL ACTION NO.

v.                                                                       COMPLAINT AND REQUEST
                                                                           FOR DECLARATORY AND
WOODLAND GOLF CLUB OF AUBURNDALE    INJUNCTIVE RELIEF

Defendant.

_____

## COMPLAINT AND JURY DEMAND

Plaintiff, Robert Lobel, by and through undersigned counsel, Michael V. Longo and Jeffrey A. Denner of Jeffrey Denner Associates, P.C., and Kenneth Fishkin, Esq, files his Complaint and Demand for Jury, as well as his Complaint for Declaratory and Injunctive Relief, against Defendant, Woodland Golf Club of Auburndale, and respectfully alleges as follows:

## PARTIES

2.  Plaintiff, Robert Lobel, is a citizen of the United States and resides in the County of Middlesex, Commonwealth of Massachusetts, which is in this judicial district.

3.  Defendant, WOODLAND GOLF CLUB OF AUBURNDALE (Hereinafter "WOODLAND"), is a non-profit corporation incorporated under the laws of the Commonwealth of Massachusetts and operated within the County of Middlesex, Commonwealth of Massachusetts, which is within the judicial district.

4.  Although WOODLAND is a "private" country club, they host, sponsor, solicit and allow members of the general public access to the club and golf course for charity and

corporate golf events, private banquets, corporate gatherings, private parties and weddings.

5. By soliciting business from non-members, advertising their services and accommodations to the public, and allowing non-members into and onto the premises for "commercial" purposes, WOODLAND is deemed a "public" entity for purposes of the Americans with Disabilities Act (hereinafter "ADA") pursuant to among others, 42 U.S.C. §12181, §12181(7)(B), §12181(7)(L) and §12131.

## JURISDICTION AND VENUE

6. Plaintiff brings this action under the Americans with Disabilities Act, *et seq.* ("ADA"), Massachusetts Civil Rights Act ("MCRA"), and Mass. Gen. Laws Chapters 272 and 93 ("M.G.L.").

7. This Court has jurisdiction pursuant to the following statutes:

  a. 28 U.S.C. §1331, which gives District Courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

  b. 28 U.S.C. §1343 (3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government;

  c. 28 U.S.C. §1367, which gives the District Court supplemental jurisdiction over state law claims; and,

  d. 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure for plaintiff's claims for declaratory and injunctive relief.

8. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district and all parties reside herein.

## FACTS & GENERAL ALLEGATIONS

9. The ADA was enacted to ensure that persons with disabilities, as defined therein at 42 U.S.C. § 12102(1), are afforded the same rights, as well as access to public facilities, as non-disabled persons.

10. Plaintiff, Robert Lobel, is disabled within the meaning of 42 U.S.C. §12102 and as such, is afforded the rights and protections of the ADA.

11. Plaintiff is an avid golfer who, prior to becoming disabled, had a single digit golf handicap.

12. Plaintiff, a non-member of WOODLAND, played the course at WOODLAND as a guest of a WOODLAND member numerous times before becoming disabled.

13. As a result of his disability, Plaintiff currently requires the use of a specialized golf cart known as a SoloRider or ParaGolfer, which has a specially designed swivel and hydraulic seat which allows disabled golfers to strike the ball while being assisted with movement and standing.

14. The carts are designed and constructed to distribute weight evenly upon the golf course to eliminate damage to the course, and enable the golfer to drive onto tee boxes, greens and bunkers without causing damage beyond that of a non-disabled golfer using the course.

15. Plaintiff has utilized the SoloRider and ParaGolfer at numerous private and

public courses throughout the United States, some of which have provided handicapped assisted carts such as the SoloRider and Paragolfer for his use.

16. In or about the summer of 2014, a member of WOODLAND contacted the club to confirm that plaintiff could use either of the above handicapped carts to play the course at WOODLAND.

17. After some back and forth correspondence and conversations, WOODLAND advised the plaintiff, through the WOODLAND member, that plaintiff would be denied access to all bunkers and greens if he used either of the handicapped carts, specifically stating in an email "we would not allow it on our greens."

18. Despite numerous attempts to put WOODLAND in contact with other golf courses at which the specialized handicapped golf carts are utilized, in an attempt to thwart the wrongfully perceived notion that the carts would cause damage to the course, WOODLAND continued in its refusal to allow plaintiff access to the course, specifically and most importantly, the greens.

19. Title III of the ADA entitled "Public Accommodations and Services Operated by Private Entities", specifically Section 12182 states:

> no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

20. WOODLAND is not exempt from compliance with the ADA as they are not exclusively a "private club."

21. WOODLAND, through its public domain and website (http://www.woodlandgolfclub.com/Club/Scripts/Home/home.asp), openly solicits non-

members, including "Fortune 500 companies, professional sports teams, businesses, political groups, celebrities and national charitable organizations" to hold golf outings at the club.

22. WOODLAND's banquet facility solicits the general public, also through its public domain and website, to contact them and create a "memorable event[s]" including: "weddings, rehearsal dinners, holiday celebrations, or other special occasions."

23. Throughout the year, WOODLAND hosts numerous charity events, including charity golf events such as the Newton Needham Chamber of Commerce's 2015 Children's Charitable Golf Tournament on August 3, 2015, to which registration is open to the public.

24. The above solicitations of the public effect commerce and are commercial in nature under the ADA.

25. WOODLAND otherwise operates its club in a manner which does not exempt it from compliance with the ADA and as such, places WOODLAND in the realm of a "public" place which must, by law, allow plaintiff full access to its facility, including the golf course and specifically, the putting greens.

26. WOODLAND is also required, by law, to provide disabled golfers such as the plaintiff herein, with a specialized handicapped golf cart, *to wit*, the SoloRider and or ParaGolfer for use at their club.

## COUNT I
## DISCRIMINATION BASED ON DISABILITY
### (Title III of ADA)

27. Plaintiff incorporates and restates each of the above paragraphs numbered 1 through 26 as if fully set forth herein.

28. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C.

§12131(2).

29. The ADA and its implementing regulations, pursuant to 42 U.S.C. §12181 requires that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation…"

30. Plaintiff has been denied and excluded from the facilities, privileges and accommodations of Defendant WOODLAND's golf course by reason of his disability, in violation of ADA including, 42 U.S.C. §12182.

31. WOODLAND violated 42 U.S.C. §12182 by failing to provide plaintiff with the type of assistive device required for him to play golf at their golf course, *to wit*, either a SoloRider or ParaGolfer.

32. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has sustained injuries and damages including the right to socialize with longtime friends, feelings of isolation and depression.

33. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has incurred the cost and reasonable expense of bringing this lawsuit, including attorney fees.

## COUNT II
## VIOLATION OF
## MASSACHUSETTS CIVIL RIGHTS ACT

34. Plaintiff incorporates and restates each of the above paragraphs numbered 1 through 33 as if fully set forth herein.

35. The Massachusetts Civil Rights Act ("MCRA") protects the rights of persons

with disabilities within the Commonwealth of Massachusetts.

36. Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C. §3002(9), 42 U.S.C. §12102, and M.G.L. c. 151B s. 1(17).

37. Defendant WOODLAND violated the plaintiff's Civil Rights, as protected under the MCRA, by denying the plaintiff access to their golf club on the basis of plaintiff's disability and need to use a specialized handicapped golf cart to play their course.

38. Defendant WOODLAND violated the plaintiff's Civil Rights, as protected under the MCRA, by failing to provide him with the type of assistive device required for him to play golf at their golf course, *to wit*, either a SoloRider or ParaGolfer.

39. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has sustained injuries and damages including the right to socialize with longtime friends, feelings of isolation and depression.

40. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has incurred the cost and reasonable expense of bringing this lawsuit, including reasonable attorney fees.

## COUNT III
## VIOLATION OF
## MASSACHUSETTS PUBLIC ACCOMODATION LAW
(Mass General Laws c. 272 §98)

41. Plaintiff incorporates and restates each of the above paragraphs numbered 1 through 40 as if fully set forth herein.

42. Mass General Laws (M.G.L.) c. 272 §98 protects disabled individuals from discrimination based upon a disability at the state level.

43. Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C.

§3002(9), 42 U.S.C. §12102, and M.G.L. c. 151B s. 1(17).

44. Defendant WOODLAND violated M.G.L. c. 272 §98 by denying the plaintiff full access to their golf course.

45. Defendant WOODLAND violated M.G.L. Chapter 272 §98 by failing to provide the plaintiff with the type of assistive device required for him to play golf at their golf course, *to wit*, either a SoloRider or ParaGolfer.

46. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has sustained injuries and damages including the right to socialize with longtime friends, feelings of isolation and depression.

47. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has incurred the cost and reasonable expense of bringing this lawsuit, including reasonable attorney fees.

## COUNT IV
## VIOLATION OF
## MASSACHUSETTS EQUAL RIGHTS ACT
(Mass General Laws c. 93 §103)

48. Plaintiff incorporates and restates each of the above paragraphs numbered 1 through 47 as if fully set forth herein.

49. Mass General Laws c. 93 §103 provides that all person, regardless of handicapped or disability, shall enjoy the full and equal benefit of all laws, including those laws which afford access to and use of public accommodations, such as WOODLAND's golf course.

50. Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C. 3002(9), 42 U.S.C. §12102 and M.G.L. c. 151B s. 1(17).

51. Defendant WOODLAND violated M.G.L. c. 93 §103 by denying the plaintiff full access to their golf course.

52. Defendant WOODLAND violated M.G.L. c. 93 §103 by failing to provide the plaintiff with the type of assistive device required for him to play golf at their golf course, *to wit*, either a SoloRider or ParaGolfer.

53. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has sustained injuries and damages including the right to socialize with longtime friends, feelings of isolation and depression.

54. As a direct and proximate result of WOODLAND's unlawful discrimination, plaintiff has incurred the cost and reasonable expense of bringing this lawsuit, including reasonable attorney fees.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against WOODLAND providing the following relief:

(a) Compensatory damages in whatever amount in excess of $250,000 exclusive of costs and interest, that Plaintiff is found to be entitled;

(b) Punitive/exemplary damages against WOODLAND in whatever amount, exclusive of costs and interest, that Plaintiff is found to be entitled;

(c) An order placing Plaintiff in the position that he would have been in had there been no violation of his rights;

(d) An order enjoining/restraining WOODLAND from further acts of discrimination;

(e) An award of interest, costs, and reasonable attorney's fees; and

(f) Such other and further relief as the Court deems appropriate.

**Plaintiff further demands a trial by Jury**

Dated: November 10, 2015　　　　　　　Respectfully Submitted by Plaintiff
　　　　　　　　　　　　　　　　　　Robert Lobel
　　　　　　　　　　　　　　　　　　Through his Counsel

　　　　　　　　　　　　　　　　　　Jeffrey Denner Associates, P.C.
　　　　　　　　　　　　　　　　　　4 Longfellow Place, 35th Floor
　　　　　　　　　　　　　　　　　　Boston, MA 02114
　　　　　　　　　　　　　　　　　　(617) 227-2800


　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　Michael V. Longo
　　　　　　　　　　　　　　　　　　*mlongo@dennerlaw.com*

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　Jeffrey A. Denner
　　　　　　　　　　　　　　　　　　*jdenner@dennerlaw.com*


　　　　　　　　　　　　　　　　　　And

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　Kenneth Fishkin